UNION PACIFIC RAILROAD COMPANY v. UNITED STATES.

1. The sixth section of the act of Congress of July 1, 1862, c. 120, incorporating the Union Pacific Railroad Company (12 Stat. 489), constitutes a contract between the United States and the company, whereunder the latter, for its service in transporting upon its road, from Jan. 1, 1876, to Oct. 1, 1877, the mails, and the agents and clerks employed in connection therewith, is entitled to compensation at fair and reasonable rates, not to exceed those paid by private parties for the same kind of service.
2. The contract is not affected by the sections of the Revised Statutes declaring that the Postmaster-General may fix the rate for such service when performed by railroad companies to which Congress granted aid, and he had no authority to insist that it was not binding upon the United States.
3. The company, having been required to perform the contract, lost no rights by a compliance therewith, as it protested against and rejected all illegal conditions attached to the requirement.

APPEAL from the Court of Claims.

This was an action brought by the Union Pacific Railroad Company against the United States to recover compensation alleged to be due for services rendered from Jan. 1, 1876, to Sept. 30, 1877, in the transportation of the mails over its road, and of the employés accompanying them, who were charged with sorting, distributing, and delivering them.

The United States traversed the petition of the company, and set up a counterclaim for five per cent upon the amount of the net earnings of the company's road from Nov. 6, 1875, to Nov. 6, 1877.

The Court of Claims was of opinion that the compensation for that service was not to be determined by reference to the act of July 1, 1862, c. 120, but by the general laws regulating the compensation for similar service by other railway companies. It therefore adjudged and decreed as follows: That whereas the sum of $618,910.54 has been found to be due to the claimant from the defendants for the services alleged in its petition, of which it is entitled to recover a moiety, to wit, the sum of $309,455.27, pursuant to the act of 2d July, 1864, c. 216; and whereas the sum of $682,032.18 has been found to be due from the claimant to the defendants on the matters alleged in their plea of counterclaim, — therefore the said moiety of $309,455.27 be set off against and deducted from the said sum found to be

due the defendants, and the defendants recover from the claim-
ant the balance remaining, to wit, the sum of $372,576.91.

The company thereupon appealed.

*Mr. Sidney Bartlett* for the appellant.
*The Solicitor-General* for the United States.


MR. JUSTICE MATTHEWS delivered the opinion of the court.

The controversy in the Court of Claims related to the
amount of compensation to which the Union Pacific Railroad
Company is entitled for postal services from Jan. 1, 1876, to
Oct. 1, 1877.   The claim is based upon the sixth section of
the act of July 1, 1862, c. 120 (12 Stat. 489), which reads as
follows: —

"SECT. 6. *And be it further enacted,* that the grants aforesaid
are made upon condition that said company shall pay said bonds
at maturity, and shall keep said railroad and telegraph line in re-
pair and use, and shall at all times transmit dispatches over said
telegraph line, and transport mails, troops, and munitions of war,
supplies, and public stores upon said railroad, for the government,
whenever required to do so by any department thereof, and that
the government shall at all times have the preference in the use of
the same for all the purposes aforesaid (at fair and reasonable rates
of compensation, not to exceed the amounts paid by private parties
for the same kind of service); and all compensation for services
rendered for the government shall be applied to the payment of
said bonds and interest until the whole amount is fully paid."

The contention on the part of the appellant is, that this sec-
tion of the statute is a contract between the government and the
company, whereby the former bound itself to furnish the em-
ployment specified, and the latter to render the corresponding
services; that this contract has not been abrogated or mod-
ified by subsequent legislation, and regulates the rate of com-
pensation for the services rendered during the period named;
that the agreed rates of compensation are to be equal to those
paid by private parties for the same kind of service; and that
the compensation received by the appellant from private par-
ties for the transportation of matter in express cars furnishes
the true standard of that comparison.

We have no hesitation in conceding that the section quoted constitutes a contract between the United States and the railroad company; but we are unable to find in it an absolute obligation on the part of the government to employ the railroad in the described services. It reserves the right so to do at its option; but it does not stipulate that it will do so.

On this point we agree with the opinion of the Court of Claims, and adopt its language, as follows : —

" The section means, we think, that the company shall transport the government's mails, munitions, troops, &c., whenever required so to do, and that the government at all times shall have the preference over private parties; but that the transportation in all cases shall be done at fair and reasonable rates, which in no case (of preference or otherwise) shall exceed the rates paid by any private party for the same kind of service, while in all cases, even where the ordinary rates are fair and reasonable, *per se*, the government shall have the benefit of those exceptional reductions of rate which railroads frequently make, sometimes as a matter of policy and sometimes as a matter of favor."

But it is contended on the part of the government that this contract does not apply to the services, the compensation for which is in question, because prior to the time when they were rendered it had been terminated by subsequent legislation. The legislation which it is claimed has that effect is embraced in tit. 46, c. 10, Rev. Stat., sects. 3997–4005, inclusive, regulating the subject of the railway postal service.

Section 4002, Rev. Stat., fixes a scale of maximum rates, graded according to the average weight of the mails carried, according to which the Postmaster-General is authorized and directed to readjust the compensation thereafter to be paid for the transportation of mails on said railroad routes. And it was in accordance with a readjustment based on these rates that, in the present case, the government insisted that the appellant was bound to conform its claims, and the Court of Claims so adjudged.

Section 4001 provides that " all railway companies to which the United States have furnished aid by grant of lands, right of way, or otherwise, shall carry the mail at such prices as

Congress may provide; and until such price is fixed by law, the Postmaster-General may fix the rate of compensation."

The substance of this provision, as is pointed out by the counsel for the appellant, first appeared in the act of Sept. 20, 1850, c. 61 (9 Stat. 466), granting the right of way and public lands to the State of Illinois, in aid of the construction of the Central · Railroad, said to be the first land grant to aid in the construction of a railroad. The grant was accompanied by the condition that the " United States mail shall at all times be transported on said railroad, under the direction of the Post-Office Department, at such prices as the Congress may by law direct." All subsequent similar grants to such corporations were coupled with the same condition. Prior to 1850, the legislation of Congress had regard only to the transportation of the mails over railways established in the various States to which no government grants or subsidies had been made.; and it merely enabled the Postmaster-General to contract for the service, if terms could be made with the corporations, and, if not, to resort to the previous methods of transportation. The provision in the sixth section of the act of 1862 — the Pacific Railroad Act — is the first of its kind. The clause in sect. 4001, authorizing the Postmaster-General to fix the rate of compensation to land-grant roads, in the absence of a price fixed by law, was first added to the general postal legislation by sect. 214 of the act of June 5, 1872, c. 335 (17 Stat. 309), which purports to be " An Act to revise, consolidate, and amend the statutes relating to the Post-Office Department," and is substantially a codification of the provisions of the law then in force relating to the subject. From that act it was transferred into the Revised Statutes in the form as quoted.

It is certainly true that these provisions, in their primary intention, did not apply to the appellant, for it did not then exist; and when it came afterwards into being, by virtue of the act of 1862, it did so with the special legislative contract in the sixth section of its charter, which constituted it a land-grant railroad company, *sui generis*, differing at least in that respect from those previously provided for; and these diverse rules as to compensation for service rendered for the government continued thenceforth to coexist without conflict. No change of

a substantial character was made in the provisions enacted prior to 1862, either by the consolidated act of 1872 or the Revised Statutes, and there is not, therefore, any ground for the inference of a change of the legislative intention that might be drawn from a significant change of language. There is consequently no present inconsistency between the existing provisions of the Revised Statutes, as applicable to the land-grant roads within their purview, and the continued existence of the contract contained in the sixth section of the appellant's charter.

The legislation referred to furnishes, therefore, no evidence of any intention on the part of Congress to alter the relation between the appellant and the government, established by the sixth section of the act of 1862, and we are of the opinion that the company is entitled, under its provisions, for the services rendered during the period covered by the present claim, to fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of services. To what extent and upon what considerations Congress has the power to make such change, under the reservations in the act, in a case where it manifests an intention to do so, is a question which does not arise in this suit, and has not been considered.

This conclusion cannot be reconciled with the view taken by the Court of Claims, that the government, having the option under its contract to employ the appellant or not in its postal service, had the right to prescribe the terms on which it would do so ; that the sections referred to in the Revised Statutes contain the terms so prescribed, and that the appellant, having performed the service with notice of the law, must be taken to have assented to those terms, notwithstanding its protest, in which it claimed the benefit of its contract as still in force. For the Revised Statutes, as we have found, do not apply, and, therefore, did not alter the contract, and gave to the Postmaster-General no authority to insist that it was not binding; and as the company, by its terms, was bound to render the service, if required, its compliance cannot be regarded as a waiver of any of its rights. The service cannot be treated as voluntary, in the sense of submission to exactions believed to be illegal, so

as to justify an implied agreement to accept the compensation allowed; for according to the terms of the obligation, which it did recognize and now seeks to enforce, it had no option to refuse performance when required.   But it might perform, rejecting illegal conditions attached to the requirement, and save all its rights.   This it did.

In computing the amount of compensation to which it claimed to be entitled, under its contract for the services performed, the appellant insisted upon the adoption of the rates charged by it to private parties, for goods carried in express cars, as being the only service of the same kind, and so furnishing the criterion of its compensation.   In the agreed statement of facts two other modes of computation were introduced: one, including with express matter, cars transporting fruit, fish, and perishable articles hauled in passenger trains; the other, adopting the charges upon the latter, exclusive of the express matter, as furnishing alternatives for the judgment of the court in determining the amount due according to the contract.

Viewed as a question of law, it is impossible to say that either of these rules of computation is the true one.   The question is, what is a fair and reasonable rate of compensation? and, in reference to that, we adopt the opinion of the Court of Claims, as thus expressed: —

"Construing the statute as we do, we think the court would not be limited, in an action where it was compelled to estimate damages, to the rates charged by the company to private parties for a single kind of similar service.   We think that a court or jury would be authorized to look over the entire field of service in determining what was a fair and reasonable charge for a kind which was similar to, but not identical with, any other.   For instance, if it should appear that the receipts of passenger cars were less than the receipts of postal cars, and the cost and running expenses no greater, we are inclined to think that that fact might be a proper element in the problem of estimating the amount of 'fair and reasonable rates of compensation.'   The reports of the auditor of railroad accounts show what rates of compensation the claimant has received for passenger cars, but in the determination of the case we

do not feel at liberty to go outside of the agreed statement of facts upon which it was submitted."

The case was not submitted to the Court of Claims in a way to enable it to determine the question of fact; and upon a re-trial, if the parties do not agree upon the amount or upon the rule of computation, the compensation, at fair and reasonable rates, must be determined upon a consideration of all facts material to the issue, not to exceed the amounts paid by private parties for the same kind of service.

It will be just and necessary to include in that estimate and finding an allowance for compensation for the transportation of mail agents and clerks; not, however, as a separate item of service, to be paid for, necessarily, at the rates which might reasonably be charged if that were the whole; but as a part of and incident to the entire service rendered in the transaction of the postal business required by the government, for which, as an entirety, the compensation should be made, at fair and reasonable rates, according to, and subject only to, the limitation required by the sixth section of the act of 1862.

To this end, for the reasons assigned, the judgment of the Court of Claims will be reversed, and the cause remanded with instructions to proceed therein in conformity with this opinion; and it is

*So ordered.*