# CENTRAL PACIFIC RAILROAD COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 46.   Argued and submitted October 21, 1896. — Decided November 9, 1896.

For several years in succession before the commencement of this action the Central Pacific Railroad Company transported the mails of the United States on its roads. During the same period post office inspectors, commissioned by the department, under regulations which required the railroads " to extend facilities of free travel" to them, were also transported by the company over its roads. During all this period the railroad company presented to the department its claim for the transportation of the mail without setting up any claim for the transportation of the inspectors, and the said claims for mail transportation were, after such presentation, from time to time, and regularly, adjusted and paid on that basis. This action was then brought in the Court of Claims to recover for the transportation of the inspectors. Until it was commenced no claim for such transportation had ever been made on the United States. *Held,* that, without deciding whether the claim of the department that its inspectors were entitled to free transportation was or was not well founded, the silence of the company, and its acquiescence in the demand of the government for such free transportation operated as a waiver of any such right of action.

THE case is stated in the opinion.

*Mr. Joseph K. McCammon* and *Mr. Charles H. Tweed* for appellant submitted on their brief.

*Mr. Solicitor General* for appellees.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The Central Pacific Railroad Company owned or leased, and operated numerous railroad lines, which may be generally described as, (1) those which were constructed by the aid of bonds from the United States; (2) lines of the Southern Pacific Railroad Company to which lands were granted by the acts of Congress of July 27, 1866, c. 278, § 18, 14 Stat. 292, and of March 3, 1871, c. 22, § 23, 16 Stat. 573, and the act of July

25, 1866, c. 242, 14 Stat. 239; (3) other railroads constructed without the aid of bonds from the government. All the subsidized portions of claimant's railroads transported for a number of years prior to the filing of this claim many post office inspectors, formerly designated as special agents, travelling on government business, for which services the company has received no pay from the government and never demanded any before making and filing the claim in suit. If the claimant is entitled to be paid therefor, the amount is between twenty-five and twenty-six thousand dollars.

The post office inspectors for whose transportation the claimant now asks compensation were commissioned by the Postmaster General, travelled on the business of the Post Office Department as such inspectors, and were furnished transportation by the claimant upon the production of their commissions, which were in the following form:

"POST OFFICE DEPARTMENT,
"UNITED STATES OF AMERICA.

"To whom it may concern:

"The bearer hereof (name of special or inspector) is hereby designated a post office inspector of this department, and travels by my direction on its business. He will be obeyed and respected accordingly by mail contractors, postmasters, steamboats, stages and others connected with the postal service. Railroads, steamboats, stages and other mail contractors are required to extend facilities of free travel to the holder of this commission. ————— ———,

*"Postmaster General.*
"Washington, ——, 188-."

The regulations of the department were during the time such transportation was furnished as follows:

"On routes where the mode of conveyance admits of it the special agents of the Post Office Department, also post office blanks, mail bags, locks and keys, are to be conveyed without extra charge.

"Railroad companies are required to convey, without spe-

cific charge therefor, all mail bags, post office blanks and stationery supplies. Also to convey free of charge all duly accredited special agents of the department on exhibition of their credentials."

The claimant transported these officials for more than six years prior to the filing of this claim, upon the production of their commissions, and made no claim for compensation for such transportation up to the filing of its claims therefor in the Court of Claims. No protest was ever made by or on behalf of claimant to the government, because of this claim for the free transportation of these officials, as contained in their commissions. The Court of Claims, among other facts, found that "it has always been assumed by the Post Office Department that the carriage of inspectors upon the exhibition of their credentials in the form before stated was an acquiescence by the railway companies with the regulations of the department, and that the regulation was a notice to the company that there was no implied agreement on the part of the United States or of the department to pay for the transportation of such inspectors, but that such transportation was to be deemed an incident of their carriage of the mails. That in all cases where written contracts have been made with companies the contracts have provided for the transportation of their agents; but in cases of what are called 'recognized service' — that. is, where the companies carry the mails for the compensation fixed by law without express contracts being made — the department has relied upon the regulation, the terms of the commission and the long-established usage to secure the transportation of these officers." The Court of Claims decided that the claimant was not entitled to recover, and dismissed its petition. 28 C. Cl. 427.

The claimant cites some sections in other statutes than those above referred to, as applicable to the different classes of railroads owned or leased by claimant. Section 6 of the act of July 1, 1862, c. 120, 12 Stat. 489, 493, is one of them, and it reads as follows :

"*And be it further enacted*, That the grants aforesaid are made upon condition that said company shall pay said bonds

at maturity, and shall keep said railroad and telegraph line in repair and use, and shall at all times transmit dispatches over said telegraph line, and transport mails, troops and munitions of war, supplies and public stores upon said railroad for the government whenever required to do so by any department thereof, and that the government shall at all times have the preference in the use of the same for all the purposes aforesaid, (at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service;)" etc.

Section 11 of the act of July 27, 1866, c. 278, 14 Stat. 292, 297, is another, and it reads as follows:

"*And be it further enacted*, That said Atlantic and Pacific Railroad, or any part thereof, shall be a post route and military road, subject to the use of the United States for postal, military, naval and all other government service, and also subject to such regulations as Congress may impose restricting the charges for such government transportation."

Section 5 of the act of July 25, 1866, c. 242, 14 Stat. 239, 240, is in substance the same as section 6 of the act of 1862 above recited. This section applies to the case of the California and Oregon Railroad, one of the lessees of the claimant.

The argument upon the part of appellant is that by these various sections the government entered into a contract with the claimant to pay for the services rendered, and the claimant agreed to transport the mails at fair and reasonable rates of compensation, not to exceed the rates paid by private parties for the same kind of service, and in the case of the Southern Pacific Railroad, one of the lessees, it was to perform such services subject to such regulations as Congress might impose, restricting the charges for such government transportation. It is urged that under these various sections applicable to the various companies forming the Central Pacific Railroad Company nothing is left to the judgment of or the regulation by the Postmaster General, nor has Congress, at any time, delegated or attempted to delegate to him the right to refuse payment of compensation to any of the railroads for the transportation of government officials; that as to all of claim-

ant's railroads, whether subsidized or unsubsidized, no department of the government is entitled to demand free transportation for any of its officers or employés, and that the regulation of the Post Office Department, demanding free transportation for post office inspectors, is simply void as being an attempt to take private property without just compensation.

It is not necessary in this case to construe the meaning of the various sections of the statutes cited by counsel for claimant. Whether the Post Office Department had or had not the right to demand free transportation for the post office inspectors appointed by the Postmaster General is, in the view we take of this case, beside the question. By the regulations of the Post Office Department, the right was assumed as existing, and the demand contained in the commissions, for free transportation for the holders of the commissions was, when acquiesced in by the company, an acknowledgment on its part of the existence and validity of the right. The company was informed by the contents of the commission that the right of free transportation was claimed, and when it was accorded pursuant to the claim, and no demand made for payment, at the time or for years thereafter until the commencement of this suit, such acquiescence amounts to a clear and conclusive waiver on the part of the company of any right to now demand such payment. If the company intended to deny such right or to dispute the validity of the demand, it should have taken some step to that end at an early date, so that the government might know that its claim was disputed instead of being acknowledged. This was not done. On the contrary, when the demand was made the company acceded to it without objection, the inspectors were transported in accordance with the demands of the government, and no notice whatever given to any one that the company disputed or intended to thereafter dispute the validity of the demand. It cannot be possible that it could silently acquiesce in this claim on the part of the government and continue for years the free transportation of these inspectors, and then suddenly make a demand for payment for their transportation for all that time,

just the same as if it had always disputed the claim and demanded compensation for the transportation.

It is insisted, however, that the principle has been decided in favor of the company in the case of the *Union Pacific Railroad* v. *United States*, 104 U. S. 662. We think the contention is untenable. The case cited was one where the services claimed were of a nature described in section 6 of the act of 1862 (*supra*), and, in the absence of any other fact, the government was clearly liable to pay for them as prescribed in that act. But the government insisted that the rule of compensation allowed under section 6 of the act had been changed by subsequent legislation. It therefore required the company to perform the services and then undertook to pay for them at the reduced rate which the government alleged subsequent legislation called for. The company objected, and this court held that the section alluded to was, in substance, a contract, and that the claim of the government that its terms were altered by subsequent legislation was without foundation, and that the company was entitled to be paid, as prescribed in the sixth section, a reasonable compensation, which if not agreed upon was to be arrived at upon consideration of all the facts material to the issue, not to exceed the amounts paid by private parties. The company at all times disputed the amount of compensation it was entitled to as claimed by the government for services confessedly within the description of section 6, and it never acquiesced in the ruling of the government that the rate had been altered by subsequent legislation, but protested against it. Notwithstanding these facts, the government claimed that the company having performed the services required of it, with notice of the subsequent law, Rev. Stat. § 4002, must be taken to have assented to those terms in spite of its protest, but it was held that the Revised Statutes did not apply, and therefore they did not alter the contract, nor did they give to the Postmaster General any authority to insist that the contract, as evidenced by section 6 of the act mentioned, was not binding. It was stated in the opinion that "as the company, by its terms, was bound to render the service, if required, its compliance cannot be

regarded as a waiver of any of its rights. The service cannot be treated as voluntary, in the sense of submission to exactions believed to be illegal, so as to justify an implied agreement to accept the compensation allowed; for according to the terms of the obligation, which it did recognize and now seeks to enforce, it had no option to refuse performance when required. But it might perform, rejecting illegal conditions attached to the requirement, and save all its rights."

One of the material facts lacking in the case at bar was present in the case cited, viz., the continuous claim on the part of the company as to its right, its ever present dispute with the government in regard to the correctness of the claim, and its protest against the government's construction of the law. Instead of that we have absolute silence on the part of the claimant here for many years and a peaceful acquiescence in the demand made by the government for the free transportation of these officials.

It is also urged that the Court of Claims erred in its finding that the railroad company carried United States mails under the provisions of § 4002, Rev. Stat., and amendatory acts, which services were recognized and payments made therefor from time to time by the defendant under the provisions of said section. It is said that that section does not apply to the case of the Central Pacific company, but that section 6, above mentioned, of the act of 1862 does apply, and counsel cites the case above commented upon of *Union Pacific Railroad* v. *United States*, 104 U. S. 662, as conclusive of that point. It is immaterial, so far as the question in this case is concerned, whether the payments to the company were made under section 4002, or under section 6 of the act of 1862, the material fact being that during all these years the company has presented its accounts to the government for services in the transportation of the mails and for the use of the telegraph, and that it has made no claim in any of these years for compensation for the services described in its petition to the Court of Claims. Whether the services for which the company has been paid were performed under the act of 1862 or under the Revised Statutes, the material fact is that the company has

claimed and been awarded compensation for certain services in connection with the mails, and at the same time has failed to make any charge or claim for services connected with the transportation of post office inspectors. Such omission is further evidence of waiver. We are satisfied that no cause of action arises in favor of the company for compensation for the transportation of post office inspectors upon the facts developed in this case.

The judgment of the Court of Claims was right, and it must be

*Affirmed.*