Downey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff’s action is for the recovery of a sum made up of amounts alleged to be due on several hundred different items of freight transportation furnished the United States within six years next before the commencement of the action. Much the larger part is made up' of amounts alleged to be due on account of the transportation of Army officers’ baggage on permanent change of station under orders, the *472 smaller amounts aggregating about one-sixteenth of the whole claim, being for transportation furnished for the Treasury Department, the Department of Commerce and Labor, the Navy Department, and the Department of Agriculture.
In no instance is it sought to recover the whole amount alleged to have accrued to the plaintiff on account of any shipment, but as to each shipment it is sought to recover an amount in addition to that already paid, and the amount sought to be recovered is the difference between the commercial rates on each shipment and the land-grant rates, or, in other words, the commercial rate less land grant, on which basis payment was made. The petition presents the various transactions as unauthorized deductions by the accounting officers, but we have not so characterized them in the findings. The reason will appear as the discussion proceeds.
The case is presented on a very meager record, and as to some matters of possible importance we are left without any showing by way of evidence with reference to these particular transactions, and must, so far as we can, apply our knowledge of established Government methods of which we may take judicial notice.
Settlement has been made as to each of the items involved, but so far as the evidence is concerned we are not infórmed as to the method or channel of settlement. No freight bills or vouchers are presented and no evidence shows us by whom the various payments were made. The petition alleges that the “ accounting officers of the several departments ” made deductions, and we are asked so to find, but Government methods as to the bulk of the transactions and such meager evidence as we have do not sustain this allegation. The “ accounting officers ” — and the scope of the designation is well understood — do many times make deductions from claims filed against the Government, but very many claims are never the subject of direct settlement by the auditors and never reach the comptroller, and as to them it can not be said that the accounting officers have made deductions.
*473 It is shown by the findings, which in this respect are as requested by the claimant, that approximately fifteen-sixteenths of the whole claim was for transportation under the War Department for Army officers, and it was for the transportation of baggage on change of station. In the absence of any showing to the contrary, it must be presumed that settlements for this service were made in the usual way, and the only evidence bearing at all on the subject indicates inferentially that they were so made. The usual method was payment by the proper quartermasters, who are disbursing officers, on vouchers stating the amount due and certified by the claimant to be correct and just. These vouchers, already paid, reached the Auditor for the War Department, one of the accounting officers, with the accounts of the quartermaster who paid them and not as claims for settlement by the auditor but as vouchers supporting the disbursements already made by the quartermasters, for which credits are claimed by them in their accounts as disbursing officers. The vouchers, it is shown and found, were stated on the basis of commercial rates less land-grant deductions. The difference must clearly have been the amount claimed, and this was certified to be correct and was paid. It appears and is found that in the office of the Auditor for the War Department, where these vouchers are, there appears with them no protest and no exception to settlement on a land-grant basis.
Indeed, we may well know that if there had been anj? protest on the part of the railroad company against this basis of settlement, or any claim for payment at a higher rate, the transactions would otherwise have presented themselves. The Government’s accounting offices were open. If a quartermaster refused payment on a basis thought to be correct by the railroad company, it was always its right to file a claim with the auditor and, upon adverse action by him, to appeal to the Comptroller of the Treasury. It was never bound to accept from a quartermaster less than it claimed to be due.
*474 So far as tlie minor portion of the transportation furnished to other departments is concerned, we may not so reasonably indulge a presumption as to the channel of settlement, and we have no evidence at all. Some of them may have been by auditor’s direct settlement, but, however that may be, it does not appear that the claimant in any case claimed more than was paid. It is not only not so shown, but had it done so we may reasonably assume that it would have gone to the comptroller with an appeal from an auditor’s disallowance and the fact that it was claiming a greater right would have appeared. These things serve to indicate, among other things, why the theory of deductions by the accounting officers, implying claims for greater amounts than those paid, can not be adopted.
There is another matter touching the action of the accounting officers which would better be referred to before we reach a discussion of the law of the case. Claimant’s counsel in effect contends that it was useless for it to claim settlement for the transportation in question on any other than a land-grant basis, because the Comptroller of the Treasury had decided that such transportation was subject to land-grant deduction. In his brief he says:
“ Claimant has never been under any delusion as to the law, and it was under no obligation to pursue all these settlements through the various channels to the Comptroller of the Treasury, as that had already been tried and failed.”
Reference is here made to headnote YI, Pennsylvania v. United States, 36 C. Cls., 507, in which it is said:
“ Estoppel for failure to present a claim can not be set up by the party whose officers decided that presentation would be a useless procedure.”
Considering now only the facts and not the law of the case, it is proper to suggest, first, that we are not given reference to any decision of the Comptroller of the Treasury specifically holding that transportation of the kind in question is subject to land-grant rates, and, second, that there never was any specific decision of the comptroller on a disputed question so holding.
This latter statement may be somewhat surprising, but a very careful and exhaustive search of the decisions even *475 back of the present organization of the comptroller’s office under the Dockery Act indicates that it is none the less true. There are numerous decisions referring to land-grant rates as applicable to such shipments, but no decision establishing that rule, and it seems to be open to the assumption that that was a construction of the law adopted from the beginning by the railroads as well as the representatives of the Government. There was an Army regulation in force at or before the passage of most of the land-grant acts prescribing the weight of baggage an officer might have transported at Government expense, and the practice of applying land-grant rates seems to have grown up without question on the part of either party. In latter years the question has more than once been before the comptroller for decision as to the application of land-grant rates to the excess over regulation allowance, but the recognition of the rule is intensified by the fact'that the question raised in such cases was only as to the excess. Some of these decisions were on submission of questions by the department, in which cases the railroad companies were not represented, but in the case, for example, of the appeal of the Illinois Central Railroad . Co., appealed September 20, 1904, from the Auditor for the War Department and decided October IB, 1904, 11 Comp. Dec., 174, the railroad company was contesting the application of land-grant rates to the excess of an officer’s baggage over the regulation allowance of 6,000 pounds. In the statement of the case it is said:
“The claimant contends that the personal effects of an officer of the Army over and above his authorized allowance on change of station is not in any sense the property of the United States, and that the Government is merely acting as the voluntary agent of the owner of the freight so far as the excess is concerned, and because of these facts there exists neither law nor authority to make a land-grant deduction from the freight charges on said excess.”
The comptroller sustained the contention of the railroad company in this case and held that the excess over regulation allowance was not subj ect to land-grant deduction. However, after the passage of the act of March 23, 1910, providing for the shipment of excess with the regulation change of station *476 allowance, it was held, 17 Comp. Dec., 428, that land-grant rates applied to the whole shipment. This was the rule until the decision of February 21, 1914, 20 Comp. Dec., 575, overruling Seventeenth Comptroller’s Decision, page 428, and holding the excess not subject to land-grant deduction. This latter case was also on appeal by the railroad company as to the excess over regulation allowance. As to the contention of the company, it is said in the decision—
“ The company contends that wherein the aforesaid shipments exceed the £ regulation change of station allowance,’ it is entitled for the transportation of such excess at the full tariff rates without land-grant deduction, and files a lengthy brief, in which it contends that as the officer is required by law to reimburse the Government for the cost of the transportation of said excess, he is not entitled to any deduction from tariff rates therefor and that the said reimbursement should be made at the full tariff rates which should be paid to the company for said services.”
The decisions of the Comptroller of the Treasury are decisions by an officer authorized by law to make them. They are final as to the executive branch of the Government and are properly referred to as to matters within the jurisdiction of the departments. They are cited here and in this connection, not as authority on any legal question involved, but to indicate correctly the then attitude of the railroad companies as to the question with which we have to deal.
As indicating further the attitude of the railroad companies on this question, we note an item in Western Trunk Line Circular 1-J, quoted in the brief filed with the comptroller by counsel in the last mentioned case in support of the contention of the claimant company, as follows:
“ In assessing charges on the personal effects of an officer changing station, the Government allowances as covered by the Government bill of lading must be considered as a separate shipment, to be billed as such. Any excess over the Government allowance of the personal effects of the officer must be considered as an entirely separate shipment, to be so billed, and charges collected on the excess at the full commercial tariff rates.”
It is said that the same provision is carried also in Trans-Missouri and Southwestern Tariff Committee issues, and that *477 “the companies governed by these tariff provisions have been submitting their bills in accordance therewith, charging the Government, in one account, for the regular allowance of officer’s baggage and household goods, and, in a separate account, setting forth the amount due for goods carried, under bills of lading, in excess of the Government allowance.”
It may be said that this claimant company was not the company presenting the question in any of the cases cited, but under existing conditions as to uniform application of rates and well-known cooperation between the railroads as to all questions such as that here involved it can be of little moment whether, for the purposes of these citations, this particular railroad company was or was not the one directly interested in the particular case. It clearly appears that during these years the railroad companies were contesting with the accounting officers as to the application of land-grant rates to the excess over regulation allowance and at the same time making no questiomas to the regulation allowance itself. To make such application as may seem proper in the instant case, it may here be said that it is not found and in fact does not appear that any of the shipments in question included an excess over regulation allowance.
The question as to whether in fact the class of shipments involved in this case were or were not properly subject to land-grant rates is of course in the case, but, if there are other questions naturally preceding that on which our conr elusion must be against the claimant, it may not be necessary that we discuss that question, and it seems to us clear that there are such questions. And whether we regard the facts as calling for the application by name of this or that rule of law,- whether we invoke the rule against the splitting of causes of action, or that as to mistakes of law, or that of estoppel in one form or another, can not be very material if we must arrive at the same conclusion, no matter which road we travel.
When the service in question had been rendered there wore two courses open to the plaintiff for the assertion of its rights to compensation. One was to apply for payment through the disbursing or accounting officers of the Government, and the other was by action in this court. The first is the usual *478 and regular course to pursue, and was the one pursued in this case, payment for the most part at least being sought and had at the hands of disbursing officers. If suit had been, brought in this court the claimant would have presented its entire demand as to each of the items sued for, or, failing to do so, it would have been concluded by the court’s judgment from thereafter claiming a right to a part of the demand which should have been included in the first suit. In other words, it could not split its cause of action. Baird v. United States, 96 U. S., 430. “ He is not at liberty to split up his demand and present it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fails.” Stark v. Starr, 94 U. S., 477, 485. While this principle does not require that distinct matters each of which would authorize by itself independent relief be presented in a single suit, a proper test for determining whether or not the causes of action should have been joined in one suit is said to be whether the evidence necessary to prove one cause of action would establish the other. The Haitian Republic, 154 U. S., 118, 125.
It is quite clear under the facts of the instant case that if the plaintiff had brought its original action in this court for the amounts for which it made claims in the departments and had secured judgment therefor it would not now be heard to assert a right to recover for the additional sums it now sues for. It does not sue for distinct matters, each of which would authorize by itself• independent relief, but its suit is for an alleged additional portion of the several matters for which it made claim and was paid. That is to say, plaintiff here claims that certain alleged deductions from each of the several items made the subject of this action should not have been made, and that it was entitled to receive the full sum of said matters even though not then claimed. The amount which the plaintiff claimed and received was arrived at by applying the deductions on account of land grant to shipments of officers’ personal effects, and hence the claim as presented and allowed was for a portion of the identical sums which plaintiff now alleges it should have *479 been paid. Its suit is therefore for the difference between the amount claimed and allowed and the amount it now claims it should have been paid. Under these circumstances it is, as has been said, clear that plaintiff could not maintain its present suit if a suit had been brought originally in this court upon the claim as presented. But an original suit was not brought in this court, and plaintiff pursued the course of presenting its claim to the departments concerned. The question' therefore arises, What effect is to be given the plaintiff’s action in presenting its claim to the proper officers for the sum which it was allowed, and receiving payment thereof, without claiming the additional portion of the several items of its claim here sued for or without objection but actual concurrence in the reductions made?
It is of course allowable for a claimant to present his claim to the accounting officers and upon disallowance of parts of it to sue for all of it in this court or to reserve in a proper way the right to sue for the part disallowed in the event of acceptance of the sum allowed where he has not concluded himself by the terms of his receipt, release, or otherwise. But some effect must be given to the fact that a party presents to the disbursing or accounting officers a claim and receives allowance thereof when it comes to his asserting afterwards in this court a portion of the identical matter, which portion he failed to assert in the claim as originally presented. It was said in the Savings Bank case, 16 C. Cls., 335, 350, that the Comptroller of the Treasury is merely an accounting officer, but the statements in that case, decided in 1880, must be qualified by the fact that the statute known as the Dockery Act, passed in 1894, 28 Stat. L., 207, 208, materially modified and added to the powers of the accounting officers. It remains true, however, that the action of the auditors and the comptroller is not binding on the courts. The Dockery Act provides that the balances which may from time to time be certified by the auditors upon the settlements of public accounts shall be final and conclusive upon the executive branch of the Government, except that a revision may be had within one year by the comptroller, “whose decision upon such revision shall be final and conclusive upon the executive branch of the Gov- *480 eminent.” The act further provides that “any person accepting payment under a settlement by an auditor shall be thereby precluded from obtaining a revision of such settlement as to any items upon which payment is accepted.” It is therefore apparent that when a party accepts payment of items in his account he can not seek a revision as to such items at the hands of the comptroller. In that department, at least, he is concluded by his action. May he present his claim for less than he really claims, and after its allowance and payment secure an additional allowance upon the items composing his claim as presented and allowed? We think the terms of the act we have quoted from preclude such a claim in the departments.
As above stated, the action of the auditors and the comptroller do not conclude the courts where the claimant, choosing not to abide their action, seeks relief in a proper case from the courts. But his action before those officers can not be entirely ignored. The fact that the statute provides that the action of said officers shall be conclusive on the executive branch carries an implication, at least, that the claimant shall present his account as he claims it to be, and this follows from the further provision that his acceptance of an allowance precludes his application for revision.
The usual application of the rule is to cases where a part of an item presented to an auditor has been by him allowed and a part disallowed, the theory being that if the claimant wants a revision at the hands of the comptroller he must give the comptroller jurisdiction of the whole item so that the comptroller may review and, if need be, correct the action of the auditor as to his allowance as well as his disallowance and, to this end, the claimant may not take what the auditor has allowed and still have his appeal as to the part disallowed. But to permit him to present a part of a claim which he has reason to believe the auditor will allow, and take the money, and then present a remaining part of the same claim, without good reason for not having presented it in full in the first place, and have his appeal in case of disallowance is to permit him to circumvent the law to his own advantage. Such being his position before the accounting officers, why is *481 it not reasonable to hold that it should remain the same when he appeals to the courts? We do not mean to say that in cases where a valid excuse for not presenting the whole account is shown, as in case of fraud or mistake or in case of want of jurisdiction in.the accounting officers, the claimant must necessarily be held strictly to his account as presented; but we do think that in all cases not properly to be excepted from the rule the proper and only proper course is to present the claim as asserted in its entirety wherever first presented.
The question then is as to the effect to be given to the plaintiff’s action in this case under the facts. It rendered certain service, and was the final carrier of shipments of officers’ personal effects, which were carried over several roads, some of which were land-grant roads. The plaintiff was not a land-grand road. The rule had prevailed for many years that for like shipments the deductions applicable to shipments of Government property should be made. The rule had been acquiesced in to the extent, at least, that no action to test it had ever been brought in this court, and so far as appears it had never been contested any place. The plaintiff rendered its accounts as final carrier, which necessarily involved the charges of the initial and intermediate carriers. The accounts were allowed and paid, substantially as rendered. Payments were accepted and no protest or objection thereto was made by plaintiff. It sues for the amount of the deductions made on the several items cf its account, and these deductions, so far as appears, it had itself made when it presented its accounts. As it could not in this court split its cause of action, so also it can not present an account to the disbursing or accounting officers with full knowledge of all the facts and without averring or showing any mistake of fact or fraud or circumstances of oppression maintain its action in this court upon the identical items of the account after receiving without objection or protest payment of the claim for the same items as rendered.
Another view of the transaction which presents itself is this: The right of recovery, if there exists a right at all, must necessarily be predicated on the proposition that shipments of the kind here involved were not properly to be *482 made at land-grant rates. This question involves a construction of the land-grant acts and, specifically, a determination of the question as to whether or not an officer’s allowance of baggage to be transported for him on change of station under orders at Government expense is, for the purposes of that shipment, “ property of the United States ” within the meaning of those words as used in the land-grant acts. Taken from the act of March 3, 1863, 12 Stat., 772, or the act of May 5, 1864, 13 Stat., 64, or other of the acts not necessary to cite, the provision is that railroads so aided—
“ Shall be and remain public highways, for the use of the Government of the United States, free from all toll or other charge upon the transportation of any property or troops of the United States.”
We have cited the fact that for many years up to and including the period covered by this suit shipments of the character here in question were regarded as within this provision, and since it does not appear that the practice was the result of any specific decision of the question by the Comptroller of the Treasury, it must be assumed that it was the result of a like interpretation of the law by the Government and the railroads interested. If the interpretation was wrong, are not the transactions thereunder subject to the usual rule as to mistakes of law ?
A mistake of law is defined as “a mistake which occurs when a person having full knowledge of facts comes to an erroneous conclusion as to their legal effect.” 27 Cyc., 809; 5 Words and Phrases, 4553. “A mistake of law is an erroneous conclusion as to the legal effect of known facts.” 15 Amer. § Eng. Ency. Law, 634.
In Black’s Dictionary of Law, page 780, quoting from 12 Wisc., 124, it is said:
“A mistake of law happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference, arising from an imperfect or incorrect exercise of the judgment, upon facts as they really are; and, like a correct opinion, which is law, necessarily presupposes that the person forming it is in full possession of them. The facts precede the *483 law, and the true and false opinion alike imply an acquaintance with them. Neither can exist without it. The one is the result of a correct application to them of legal principles, which every man is presumed to know, and is called ‘ law ’; the other, a result of a faulty application, and is called a ‘ mistake of law.’ ”
In Bank of the United States v. Daniel, 12 Pet., 32, the parties, both informed as to all the facts, had adjusted their differences under a mutual construction of a statute of the State of Kentucky. One of the parties sought to recover a part of the sum paid, upon the ground that the transaction was not within the statute. The court held it a mistake of law, which, it is said, “ forms no ground of relief from contracts fairly entered into with a full knowledge of the facts.”
In United States v. Edmonston, 181 U. S., 500, the plaintiff sought to recover an alleged excess payment required of him in connection with the preemption of lands, the Government’s representative misconstruing the law as to the price required to be paid, and the purchaser acquiescing. Recovery was denied because the payment was voluntary, and because “ while there was a mistake, it was mutual and one of law” [Italic ours.]
As to the effect of a mistake of law on the part of one conversant with all the facts and unaccompanied by any fraud or misrepresentation the authorities are plentiful in support of the proposition that such a mistake will not afford ground for relief, either in law or in equity, and the parties will be left where they have placed themselves. If where only one of the parties is mistaken as to his rights under the law he may not be relieved, there would seem to be less reason for affording relief to one where, as in this case, both parties have proceeded for years under the same conception of their legal rights. “ Mistake of law may be a misapprehension of the law or of their private rights to property by both parties to a transaction, both of them making substantially the same mistake, or it may be a misapprehension of the law or of his private right by one of the parties alone.” Kerr on F. and M., 399.
*484 In Utermehle v. Norment, 197 U. S., 40, 56, it is said:
“ It has been held from the earliest days in both the Federal and State courts that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief at law or in equity and forms no excuse in favor of the party asserting that he made such mistake.”
In Lamborn v. County Commissioners, 97 U. S., 181, citing other authorities, it is said:
“ Mistake, in order to be a ground of recovery, must be a mistake of fact and not of law. Such, at least, is the general rule.”
There are many other authorities along the same general lines which we do not deem it necessary to cite, except as we may have occasion to refer to some of them as more properly in support of a slightly broader theory of the case. If, conversant as it was with all the facts and not in any way the victim of fraud, misrepresentation, or duress, the claimant for these many years settled for its services in the class of cases here involved on a land-grant basis and did not attempt to assert any greater right, it must have been because it did not regard itself as entitled to anything more under the law, and if that is the better view of the transaction it seems clear that if there was any mistake it was a mistake of law from the effects of which it can not now be relieved. It was a mistake, not as to any fact, but as to the legal effect of known facts, a mistake in the application of the law to the facts.
What has been said embodies to some extent the conclusion that there never was any specific decision of the Comptroller of the Treasury holding such shipments subject to land-grant rates, but to meet the contention of counsel we suggest that the conclusion must be the same even if there had been such a decision. If the railroad companies, this claimant included, were for these many years accepting without protest compensation on a land-grant basis because of a decision of the comptroller to the effect that they were not entitled to more, the decision must have been rendered equally long ago. They were not precluded by it from asserting their rights in this court, whose doors were always open to them, and con *485 tinued acquiescence so thoroughly evidenced by the manner of presentation and settlement of claims must as thoroughly commit them as if the construction was their own from the beginning. “ Every person is bound to take care of his own rights and to vindicate them fully in due season and in proper order.” Am. and Eng. Ency. Law, vol. 12, 535.
There is yet another view of the case leading us to the same conclusion by a route different only in theory. Whether we may in strict accuracy call it “ estoppel ” is not material. By the courts it has been many times so denominated, sometimes preceded by the word “ equitable,” occasionally by the word “ quasi.” It is also referred to as a “ waiver,” and in some instances it is very properly discussed as a doctrine of public policy, a doctrine necessary that there may be an end to accounting as well as to litigation.
In discussing this phase of the case it is not necessary that there be repetition of the many circumstances already stated. The whole course of procedure on the part of the plaintiff company is before us. It presents now no claim for any service as to which it has not already presented its claim elsewhere and been paid. It asserted the amount due it in each instance and was paid, and we may well assume from all the facts of the case that it was paid just what it expected to be paid when it rendered the service. It accepted payment in every instance without protest, so far as appears, and in most instances, as we have seen, it acquitted the Government as to any further demands by its certification as to the correctness of the demand made. Shall it now, probably because of some later action of this court on a similar question, be permitted to assert its right to additional compensation for the same service for which it has already presented its claim, been paid, and accepted payment without protest ? The rules of laAV as laid down in innumerable cases are against its right so to do and the necessities of a vast governmental machine in which there must so apparently be system and finality require regarc for those rules.
As to the effect of payment and acceptance after a statement of the account of the auditing officers which clearly does not present so strong a case as we have here since a part *486 of the amount claimed was disallowed, it is said in Baird v. United States, supra:
“In effect this was an offer to pay the balance stated in satisfaction of the claim. The acceptance of the money afterwards without objection was equivalent to an acceptance of the payment in satisfaction.”
In the Railway Mail Service cases, 13 C. Cls., 199, certain railroad companies had transported mails over their main and branch lines for the Government during a period of several years, receiving without protest a certain rate of compensation, though in fact a statute provided for a greater rate of compensation. Subsequently, objection was made by both companies to the rate at which they were being paid, and later suit was brought for the recovery of the amount alleged to be due them and which had been withheld in mistaken construction of the statute. It was held that for the period during which they had accepted compensation, as determined by the department’s construction, without protest there could be no recovery, but from and after the time of protest recovery was allowed. The court said, in dealing with the claim of the first company:
“ It took no exception to this rate of payment until December 4, 1875. Up to that time therefore it must be regarded as acquiescing in the department’s ruling.”
On appeal to the Supreme Court the decision was affirmed (103 U. S., 703), the court saying:
“ The Court of Claims found in favor of the claimant, and rendered judgment for the sum due after the notification and demand of December 4,1875, but held that the company was estopped by its acquiescence in the adjustments and the payments it had received without objection or protest from July 1, 1873, to that period. In this we think the Court of Claims was right.”
In Central Pacific R. R. Co. v. United States, 28 C. Cls., 427, the claimant, during a period of more than six years, had transported at the request of the Postmaster General “ post-office inspectors ” of the Post Office Department without payment for the transportation and without objection on its part. Suit was later brought to recover compensation for such *487 transportation. It was held that the company, by its acquiescence in the demand of the Postmaster General, had waived its right to compensation and was now estopped from setting up such a claim. The court said:
“To deduce from the facts an obligation upon the part of the defendants to pay for transportation of the special agents would be in direct violation of the contemporaneous construction of the obligation given by both parties during the performance of the service.”
This decision was affirmed by the Supreme Court, 164 U. S., 93. The court, page 97, said:
“ By the regulations of the Post Office Department the right was assumed as existing, and the demand contained in the commissions for free transportation for the holders of the commission was, when acquiesced in by the company, an acknowledgment on its part of the existence and validity of the right. The company was informed by the contents of the commission that the right of free transportation was claimed, and when it was accorded pursuant to the claim, and no demand made for payment, at the time or for years thereafter until the commencement of this suit, such acquiescence amounts to a clear and conclusive waiver on the part of the company of any right to now demand such payment.”
In United States v. Garlinger, 169 U. S., 316, an action for additional compensation as inspector in the customs service in which a judgment of this court in favor of the claimant was reversed, the Supreme Court said:
“ He, however, elected to remain during the period above mentioned, and to receive the compensation awarded him by the collector, without any protest as to its insufficiency. It may be fairly presumed that the collector in paying, and the claimant in accepting the money paid, supposed that the payments were in full. Such a course of conduct, we think, brings this claim within the principle of well-settled cases, that the receipt of payment, purporting to be in full, when there is no fraud or coercion, can not afterwards be repudiated as insufficient.
* $ 4c $ * $
“ We do not want to be understood as saying that the mere fact of receiving money in payment will estop a creditor. But where, as in this case, the payments were made frequently, through a considerable period of time, and were re *488 ceived without objection or protest and when there is no pretense of fraud, or of circumstances constituting duress, it is legitimate to infer that such payments were made and received on the understanding of both parties that they were in full. Such a presumption is very much strengthened by the lapse of two years before the appellee thought fit to make any demand.”
In the case of Capt. Wadleigh, 4 Comp. Dec., 328, a claim for additional pay and allowances, the then assistant comptroller, in a well-considered opinion, said:
“It is no sufficient excuse to say that at the time of the allowance of the former claim this claim, if presented, would have been disallowed by the accounting officers under the rule then prevailing. It is not to be presumed that the comptroller would have determined the question erroneously if properly presented; but whether he would have done so or not, that was the time and forum for settling the entire matter, and it affords no legal excuse for dividing his claim and presenting it piecemeal. Nor can it be said that he was compelled to accept this interpretation of the law. The courts were open to him to assert his rights if he felt himself aggrieved by the action of the acounting officers. He did not avail himself of this privilege, and his long acquiescence, if nothing else, ought to estop him from recovering anything beyond the payments he has received.
$ * * # # * *
“ Claims of this kind are without substantial equity. The officer was paid at the time the service was rendered all that he or the Government officers supposed he was entitled to receive. Viewed on the plane of a private contract no court would disturb such payments to allow an additional amount because both parties misconstrued the contract. Whether erroneous or not, the parties to a contract are bound by the construction which they themselves place upon it. It can not be objected that this being a transaction between a sovereign and a subject, the latter is bound to accept the interpretation of the Government officials, for, as stated above, the courts were available for his relief.”
The rule is so well settled and attention has been so often called to the fact that exceptions to its operation are always in cases where the exception is justified because of some circumstance peculiar to the case, that, we do not deem it necessary to lengthen this opinion for the purpose of further quo *489 tation. And it can scarcely be questioned that this case is peculiarly and wholly within the rule.
But there is still another view of the case which we think ought to be suggested, even though it may not be deemed necessary to indulge in lengthy discussion.
The transportation in question, so far as it involved the baggage of Army officers, was payable from the appropriation carried in annual Army appropriation acts under the subhead “ Transportation of the Army and its officers,” and from that appropriation alone. In the act for the fiscal year first involved in this case (act of Mar. 3, 1909, for the fiscal year 1910, 35 Stat., 732 at 745), as well as in former and all subsequent acts, wherein it is provided that “such land-grant railroads as have not received aid in Government bonds ” shall in no case be paid more than 50 per centum of the amount of service, it is also provided “that such compensation shall be computed upon the basis of the tariff or lower special rates for like transportation performed for the public at large, and shall he accepted as in full for all demands for such service.” [Italics ours.] With reference to the other class of land-grant roads, it is also specifically provided that in expending the money appropriated by the act no more shall be paid than 50 per centum of the compensation than shall at that time be charged to and paid by private parties for like and similar transportation, which amount “shall be accepted as in full for all demands for such service.”
We are not put to a discussion of the question as to the right of Congress, by subsequent enactment, to legislate into the land-grant acts something which may not have been there originally, for it did not attempt to do that. It put a limitation on the use of appropriated funds. This it clearly had a right to do. The claimant was chargeable with knowledge of the condition and its acceptance of payment thereunder worked an estoppel against a claim for further compensation.
The conclusion we have reached is different from that in the Chicago, Milwaukee & St. Paul Ry. Co., No. 32975, in which the claimant had judgment. None of the questions *490 herein were suggested by the defendants in that case. The Government’s brief stated:
“ There is but one question involved in this case, and that is whether or not the railroads should carry the effects of officers when transferring stations at land-grant rates.”
As was suggested in Wilson's case, 38 C. Cls., 6, 10, the fact that a judgment has been rendered in another case does not present a sufficient reason for an entry of judgment in this case. If the same defenses were available, they should have been presented; but they were not offered; and, as said by Judge Howry in that case, “the court can not follow precedents for which it is not responsible, because available defenses did not appear.” The defenses were made in this case, and we can not regard the Chicago, Milwaukee c& St. Paul Ry. Co. case as authority upon the questions now considered.
We conclude that the plaintiff is not entitled to recover, that its petition should be dismissed, and it is so ordered.
Hay, Judge, Booth, Judge, and Campbell, Chief Justice, concur.
Barney, Judge, concurs in the conclusion reached.