Booth, Judge,
delivered the opinion of the court.
This case is now under consideration upon its merits. When the case was originally before the court, we were of the opinion that the plaintiff company was the assignee of the claim in suit, and therefore not the proper party to sue. The Supreme Court reversed our decision upon this point and on Juty 13, 1921, remanded the case.
The plaintiff contends for a judgment amounting to $27,000, alleged to be clue on account of improper and unlawful deductions made from the total weight of freight transported with certain movements of troops during the Spanish war, and the misapplication of rates thereto.
The facts upon which the claims are founded are obviously beyond dispute in any important particular. Kailway companies uniformly allowed to each passenger transported the incidental privilege of 150 pounds of personal baggage carried free. When all the transportation here involved had been accomplished, it appears that along with the passenger coaches used to transport the troops, there were also furnished freight cars for the carriage of horses, wagons, camp equipage, and other military impedimenta. When the company presented its bills for this service, the defendant deducted from the total amount of freight carried the allowance of 150 pounds of personal baggage free for each soldier, whether said individual had transported this amount or not.
If the military impedimenta transported weighed 205,550 pounds, and the number of soldiers equalled 983, the defendant deducted 147.450 pounds (i. e., 983 times 150) regardless of whether that weight of personal baggage accompanied the soldier, or was carried with him in the coach or in separate cars. Manifestly, without a special contract to *269 sustain the deduction, it is without warrant of law, and this court lias so held in a number of cases.[1]
If this was the single issue involved in this suit, and the situation now was the same as then prevailed, it would be easy of solution. In the cases cited below the court was enabled to arrive at a definite judgment in virtue of a written stipulation entered into by a special attorney of the United States and the plaintiff’s attorney of record. This signed stipulation recited an agreement that in no event did the personal baggage of an enlisted man exceed 40 pounds and that of an officer exceed 100 pounds, accompanied by a confession of judgment for the amounts claimed on the part of the defendant. When this case came on to be heard the then Assistant Attorney General withdrew from said stipulation and declined to be bound thereby. Eealizing that this sudden turn in affairs entitled the plaintiff to supply, if he could, by proof, the facts theretofore stipulated the court granted leave, after the remand, to do so. The plaintiff lias taken the depositions of several witnesses. It is the very best proof of which the case is susceptible. In some instances it comes direct from Army officers who had charge of similar shipments, and demonstrates beyond peradventure that the facts stated in the stipulation withdrawn were well within the fact, and decidedly conservative. In so far as this particular feature of the case is concerned, we believe the proof is sufficient. The obstacles which the case encounters, and which this proof in no way removes, arise from a very different and distinct set of facts and circumstances.
The Southern Kailway Co., on April 18, 1904, the same day the petition in this case was filed, both petitioners being represented by the same counsel, filed its petition in this court seeking recovery for precisely the same items upon identically the same causes as herein set forth in items Nos. 1, 2, 3, 4, and 16, as shown by the proofs in both cases. *270 The case of the Southern Railway Co., 24913, came on for hearing, 'and. resulted in findings of fact, with a conclusion of law, awarding judgment in favor of the plaintiff in the sum of $23,563.69. On May 5, 1909, the plaintiff’s counsel voluntarily remitted $245.16, due to clerical errors, and the judgment was accordingly reduced to $23,318.53. The record of this litigation discloses that at the time of rendering the 'aforesaid judgment there were some items of the claim included in the petition, but upon which the auditor had not reported, over which the court retained jurisdiction; that subsequently a supplemental petition covering these additional items was filed, finally resulting in an additional judgment in favor of the plaintiff company for $4,550.89. These judgments have both ‘been appropriated for by Congress and paid. The right of the Southern Railway Company to sue is not challenged, nor is it denied that the Southern Railwaj? Co. did assert a claim “ (1) that it received no pay whatever with respect to certain freight-transported, and (2) that the pay which it received for other freights was too little by reason of divers underclassification of freights.” (Quotation from plaintiff’s brief.)
In order that there may be no mistake as to the extent and character of the claim it did assert, we reproduce the petition in an appendix to the findings. The plaintiff’s contention with respect to this issue, if we correctly deduce it from the brief, is that “ the particular occurrences and the particular misapplications of rates in the two oases were not the same.” This contention, as a matter of fact, is obviously without merit. A comparison of the items will disclose their identity. If it is an argument, of which we are not positive, that in the adjudication of the Southern Railway Co. case no allowance was made for alleged misapplication of freight rates, the fact is true, but the consequences contended for do not follow. The original petition in the Southern Railway Co. case was filed April 18, 1904, by the same counsel now of record in the instant case. This petition was supported by the depositions of two witnesses, certain stipulations and exhibits, and on February 8, 1909, a judgment, as previously noted, was awarded the plaintiff. Subsequent to the rendition of this judgment, *271 and its reduction by a remittitur, the plaintiff filed a petition asking the court to retain jurisdiction of the case to enable the presentation of proof as to certain items, as to which no findings had been made because of the absence of proof with respect to the same. The court on February 11, 1909, granted the prayer of the petition, and by proper order i'etained jurisdiction of the case to accomplish in the end what was apparently just. The petition filed February 11, 1909, as well as the supplemental petition filed thereafter, contains no allegations that the judgment of February 8, 1909, was erroneous in principle, nor did not include the entire claim originally presented.
On the contrary, the allegations are confined strictly and solely to a right of recovery for items not included in the former judgment, without the slightest evidence of dissatisfaction with the same in any respect. The court, upon the coining in of the report of the auditor, awarded the Southern Eailway Co. an additional judgment for $4,550.89, which has since been appropriated for and paid. From the facts recited there is no escape from the conclusion that the suit of the Southern Eailway Co. embraced, and was intended to embrace, all the claims it then had growing out of the transactions enumerated. The railway company and its at-tornejr had before them a petition prepared and submitted by the attorney of record alleging damages because of two distinct causes, excessive deductions upon personal baggage account, and misapplication of freight rates. The report of the auditor filed in this court discloses as to each item involved, the number of cars, the total weight of freight transported, and the amount paid, thus enabling anyone, and especially one skilled in the practice, to ascertain, by a simple method of computation, the rate per cwt. of freight transported.
What is more, a second petition covering the identical transaction is filed and judgment obtained, without a motion for a new trial or the slightest suggestion of error with respect to either judgment. The Southern Eailway Co. has long since received and accepted the payment of both judgments. If the doctrine of res adjudicata is inapplicable to *272 a legal status similar to tliis, it would be difficult indeed to make such a defense available. If one may allege in his jaetition two causes of action, and submit his case on the petition and accompanying proofs, obtain two judgments thereon, and years afterwards disturb those judgments on an allegation of lack of identity in the subject matter adjudicated, because the plaintiff itself, for reasons of its own, submitted no proof as to one cause of action set up in its petition and claimed for, but contented itself with judgment for the other, manifestly litigation would be intermiable. The court had jurisdiction of the cause, the petition covered the subject matter of complaint, identical with the one here involved, and having disposed of the case the judgment, under the law, forecloses the controversy, not only as to the point adjudicated, but as to all other points which might properly be adjudicated. California Bridge & Construction Co. v. United States, 50 C. Cls. 40.
Section 178 of the Judicial Code provides:
“ The payment of the amount due by any judgment of the Court of Claims, and of any interest thereon allowed by law, as provided by law, shall be a full discharge to the United States of all claims and demand touching any of the matters involved in the controversy.”
Under the statute we are precluded from reconsidering a claim after an appropriation has been made therefor and payment accepted by the plaintiff. Pilkington v. United States, 36 C. Cls. 357; Russell’s case, 15 C. Cls. 168; Vaughn v. United States, 34 C. Cls. 342; United States v. Frerichs, 124 U. S. 315, 320. As said by the Supreme Court, “ the payment of the amount of the judgment would ipso facto satisfy the demand.”
Again, section 179 of the Judicial Code provides:
“Any final judgment against the claimant on any claim prosecuted as provided in this chapter shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy.”
This statute is comprehensive and bars any further claim or demand for any matter arising and involved in the controversy. Our judgments are conclusive until set aside upon *273 motion for a new trial. United States v. O'Grady, 22 Wall. 641.
We granted the Southern Kailway Co. an unusual privilege to prove its claim, a privilege we have since refused to grant, a precedent we now decline to follow.
The remaining twenty movements involved in this case were accomplished on bills of lading. The pertinent facts with reference thereto appear in Finding ITT. Settlement for each item embraced within this class was made with the Florida Central & Peninsular K. K. Co., the final carrier. The latter railroad presented to a disbursing quartermaster of the Army the original bills of lading disclosing the movements, and deductions were made as set forth in the findings. The vouchers issued to the Florida Central & Peninsular E. E. Co. were accepted by the company without protest or objection, and the money collected and received by it and a receipt in full given, and the railroad company in its own name has never asserted a claim to the contrary. It was not until after the merger in 1903 that such a claim ivas made. It is not. as we understand the issue, contended by the plaintiff that the settlements effected were in any wise contrary to the express terms of the bills of lading. What is sedulously claimed is an illegal deduction, irrespective of the terms and conditions of the movements as appears* from the aforesaid bills. If any of the bills of lading contained a notation, and many of them did, that an amount of baggage claimed for ivas carried in carload lots, then such carload lots were not included in the voucher and no payment was made for the same.
As to this proceeding, the plaintiff challenges the legal right to insert such a notation on the bills. The notations complained of were doubtless made by Government officials, but the bills, with the notations upon them, Avere delivered to the proper officials of the railroad company, and by them submitted to the disbursing agent for settlement. While possibly such notations may have, in the routine observed by the railroad in receiving and auditing them, escaped particular notice and attention, it is inconceivable that such omission could have prevailed Avlien the issue Avas raised by *274 the disbursing officer. When the time arrived for the payment of the service rendered, as the deposition of an official having to do therewith expressly shows, the railroad received positive notice of the notation and physical exhibition of the Government’s position with respect thereto. If, ihon, the company failed to lodge an objection or jmotest to the proceeding, but on the contrary accepted the settlement and received the money, are we warranted in again reviewing the proceedings on the slender proposition that the written notations made by one party to the contract, but known and acquiesced in by the other, are not binding ? We need not cite authorities that the bill of lading constitutes the contract of carriage between the parties, nor need we again reassert the well-established precedent that the Government may enter into special contracts for transportation. As a matter of fact the' Southern Passenger Association on November 15, 1898, did adopt a resolution wherein it expressly appears that the allowance of personal baggage was extended to cover a variety of items not theretofore generaly considered as within the meaning of that term. Therefore, as to this particular class of settlements, aside from their finality by acceptance of payment without protest it seems to us recover}’ therefor is precluded by the terms of the bills of lading themselves. If the railroad company by its conduct ratified the change made in the contract of shipment, obviously it would be bound by the same.
Aside from all this, however, this court has recently decided in the Southern Pacific Company and the Northern-Pacific Ry. Co. cases, ante, pp. 36 and 122, that settlements made, as the same were made in this case, are final. See also Baltimore & Ohio R. R. Co. v. United States, 52 C. Cls. 468; Oregon-Washington R. R. & Nav. Co. v. United States, 54 C. Cls. 131; 255 U. S. 339.
This case exhibits in a marked degree the soundness of the principles announced in the preceding cases cited. The original petition was filed in 1904, almost nineteen years ago. The transaction involved had its origin in the Spanish-American War, nearly, if not quite, a quarter of a century back. If we are called upon to explore the accounts and audits of this multitude of items at this late day in the *275 face of settlements tlien. made without protest or objection, little finality may be accorded to contemporaneous settlements. Some of this extraordinary delay is not attributable to the plaintiff or its attorney. An appeal to the Supreme Court intervened, and calls upon the accounting officers made years after the transaction occurred are necessarily tedious and slow, again emphasizing the importance of close scrutiny in controversies 'over settlements where the objections raised noiv could have been so pertinently raised then, and the issue finally7 resolved within a reasonable compass of time.
In view of the previous holdings of the court, as well as upon the merits of the case, we think the plaintiff is not entitled to judgment. The petition will be dismissed. It is so ordered.
(tRAiiam, Judge; Hay, Judge; Downet, Judge, and Campbell, Chief Justice, concur.

 No. 24892. Chicago, Rock Island & Pacific Ry. Co., decided May 7, 1900 ; No. 24893, Chicago & Northwestern Ry. Co., decided June II, .1900; No. 24895, Chicago, Milwaukee & St. Paul Ry. Co., decided April 2, 1906: No. 24897, Pennsylvania R. R. Co., decided June 9, 1910; 24901. Chicago & Alton R. R. Co., decided May 14, 1906; No. 24904, Chicago, Burlington & Quincy R. R. Co., decided February 25, 1007: No. 24905, Northern Pacific R. R. C'o., decided January 14, 1907; No. 24907. Missouri Pacific Ry. Co., decided February 1, 191w; No. 24914, Atlantic Coast Line R. R. Co., decided May 29, 1909; No. 24917, Louisville & Nashville R. 11. Co., decided May IS, 3.907 ; No. 24920, Cincinnati, New Orleans & Texas Pacific Tly. Co., decided March 30, 1908.