Downey, Judge,
delivered the opinion of the court:
The action is predicated on a disallowance by the proper auditor of a part of plaintiff’s bill for personal transportation, the difference arising by reason of the application by the Government of a fare derived from a combination of individual and party fares. The question was settled adversely to the Government’s contention in Atchison, Topeka & Santa Fe Ry. Co. v. United States, 256 U. S. 205, appealed from this court.
The original action in this court, from the judgment in which the appeal was taken, was our number 33214, in which the petition was filed March 30,1916, and declared upon service rendered in 1914 and 1915. The case remained pending without preparation for trial for a long time, and on July 16, 1919, the plaintiff, on its application, was allowed to file a supplemental petition in which it declared on similar service involving the same question, bills for which were ren *587 dered on or between April 14, 1914, and January 15, 1915. Becovery was had for the service declared upon in both the •original and supplemental petition. This action was commenced May 4, 1922, and declares upon service for which bills were rendered on different dates between May 11 and May 25,1916. The findings, predicated on stipulation of the parties, show only that the service was rendered in May, 1916. It is said by plaintiff that the case is “ substantially identical ” with plaintiff’s case above referred to, “ the items involved in the present case having been omitted inadvertently from the petition in No. 33214.”
The bar of the statute of limitations, so called, has not been invoked by the defendant, but that is not necessary to enable us to consider any such question involved. The six years’ statute is not in this court a statute of limitations in the ordinary sense but is jurisdictional. It must appear affirmatively that the cause of action accrued within six years next preceding the commencement of the action or jurisdiction does not appear. And the question is too close in this case to justify any presumptions.
The stipulation, which is unsupported by any evidence, simply recites that the service was furnished in May, 1916. The statement above as to the date of the bills is taken from the exhibits filed with the petition and made a part thereof and not proven and justifies no inference therefrom except that the service was rendered before the date of the bills. Within the statement in the stipulation, incorporated in the findings, is the possibility that we may be wholly without jurisdiction. There is at least room for doubt and an absence of a necessary affirmative showing.
Upon another point it is to be observed that the service now sued upon was rendered and the bill therefor stated very soon after No. 33214 was commenced and more than three years before the supplemental petition was filed in that case, a petition which had for its purpose the bringing into that case of items not sued on in the original petition, although they might have been, since they antedated its filing. The specific items involved in the present suit were not adjudicated in No.. 33214, but they were. all of a class, and they might and ought to have been included in that *588 suit if it was desired to prosecute them. A multiplicity of actions is never favored and splitting of causes of action is forbidden. Baird v. United States, 96 IT. S. 430; Stark v. Starr, 94 U. S. 477; The Haytian Republic, 154 U. S. 118.
But there is another feature of this case which involves important considerations and which perhaps should have called for specific action long ago. Hope that undesirable practices will cease may justify a deferring of the remedy, btit when hope is long deferred and the mischief does not abate but, on the contrary, the practices seem but to grow with time and augment the resultant burdens, it is time for the remedy, if there is one, and we are quite sure that there is. These general observations apply no more to this case than to many others, but it is typical and in its facts prompts some conclusions which must, of course, apply to all of like character.
The service upon which this suit is predicated was rendered in May, 1916. The plaintiff stated its bills at the rates it conceived to be correct, aggregating $6,888.50, and presented them to a disbursing officer of the Army for payment, the rather usual procedure in such cases, resorted to, we have frequently been told, because more prompt payment could thus be received than by other methods. We are not definitely informed as to. the date of their presentment, but plaintiff’s averment is that they all bore date within the same month in which the service was rendered, and it is to be presumed that they were promptly presented. Railroads, in common with humanity, are not likely to be dilatory in such matters.
The disbursing officer did not concede the correctness of the bills, and restated them on another basis as the basis on which he would pay them, his restatement reducing the total amount to- $3,171.20. The plaintiff protested this proposed settlement, and refused payment on that basis, and the claims were sent to the Auditor for the War Department for direct settlement.
It may be suggested that such was a well-known and established practice, a necessary practice in such circumstances under the then accounting system. A disbursing officer could only pay a claim at the amount shown on its *589 face. It constituted his acquittance in the settlement of his accounts, and he could not allow a part and disallow a part. If he was willing to pay a lesser amount and settlement was acceptable on that basis it was necessary that the voucher be restated so that it would show the amount which he was actually paying. If he would not pay the claim as presented and the claimant would not accept a restatement, the claim must be sent to the proper auditor for settlement, and he could allow in part and disallow in part.
Again as to the exact date we are not informed, but in due course the auditor settled these claims, allowing the plaintiff by his settlement $4,898.30 and disallowing $1,990.20. The plaintiff had a right of appeal to the comptroller, conditioned that he prosecute such appeal within one year and if he did not deprive himself of the right of appeal as to the disallowance by accepting payment of the amount allowed. The plaintiff did not appeal to the comptroller and did not in any manner protest the auditor’s settlement, but, without protest, received its warrant for the allowed sum of $4,898.30 and received payment of that sum. As to the time of that settlement it can only be said that if we allow a year for its accomplishment it was approximately five years before the commencement of this action.
Is there any force to be found in these facts as against the plaintiff’s right to successfully maintain. this action? It would, in the light of all that has been said, be strange if there were not. The contention adverse will no doubt be, as it has been heretofore, that the statute gives a claimant six years within which to commence his actions and that such a right inures to him during that entire period. Perhaps the construction put by the Supreme Court on the nature of the six-year statute in this court might be for consideration in this connection, but the discussion need not embrace that question. Innumerable decisions have denied plaintiffs the right to recover in suits brought well within the six-year period. And it is the question of the right to recover, in the circumstances, rather than a jurisdictional question as to the right to maintain the suit. The lapse of time as it appears here will be reverted to in its proper connection.
*590 Let us suggest at this point, remembering that we are dealing with claims against the United States which have passed through some recognized process of presentment and settlement, that acquiescence in the settlement precludes further recovery. This was a fundamental doctrine announced in the Baltimore & Ohio (52 C. Cls. 468) and Oregon-Washington (54 C. Cls. 131) cases in this court, and when upon appeal of the latter case, by the plaintiff, the Supreme Court, by Justice McKenna (255 U. S. 339), announced its views affirming this court, this doctrine of acquiescence permeated the able and comprehensive opinion. It is, of course, not to be contended that this case is a Baltimore & Ohio or an Oregon-Washington case, but when we abandon the application of “hog cases” only and search for principles we are the more apt to find the true and the useful rule.
And then we may add that acquiescence is not necessarily a matter of affirmative declaration, but that it is frequently a matter of presumption from circumstances or the necessary inference from nonaction, and in such cases affirmative action is necessary to rebut the natural implication.
This line of thought suggests the affirmative action necessary if one is to be relieved of the implication suggested, and that may be said primarily to be protest. It is entirely true that nonacquiescence in a thing done may be indicated otherwise than by formal protest, but protest is the usually adopted method. It is that thing which if done able attorneys representing plaintiffs such as this never fail to call to our attention, and we might well wonder why so much trouble in so many cases to allege and prove a protest if it serves no purpose and its absence is not prejudicial. We do not subscribe to the doctrine that it is an all-efficacious remedy for all ills, but, properly applied, it serves its proper purpose.
Reverting to the facts, the record tells us that when the disbursing officer proposed to restate plaintiff’s vouchers and pay it but $3,171.20 of the $6,888.50 claimed the plaintiff “protested” and the matter was referred to the auditor. That official allowed the plaintiff $4,898.30, and it did not protest that settlement or take an appeal, a right it had, to the comptroller for a revision of the auditor’s settlement. Is *591 there not significance in that statement alone? A protest against a disbursing officer’s settlement, but no protest when the auditor allowed it $1,727.10 more than the disbursing officer was willing to pay and disallowed only $1,990.20 of its whole claim — more than half of which the disbursing officer had regarded as incorrect. Then it took the money allowed by the auditor, which it could not have done and had its appeal to the comptroller, a method of indicating nonacqui-escence, and the whole picture is necessarily one of accepted settlement.
In the Oregon-Washington case, supra, the Supreme Court, commenting on the nonaction of the plaintiff, said, “ It is inconsistent with the. reservation of a right and an intention to subsequently make a judicial assertion of it. Creditors are not usually so indulgent, and the appellant had remedies at hand. The courts were open to it; certainly protest was open to it.” (Italics ours.)
In Nelson Oo. v. United- States, 261 U. S. 17, the Supreme Court refers to the doctrine of “ acquiescence by conduct.”
In the Railway Mail Service cases, 13 C. Cls. 199, involving a controversy as to the rate of compensation, payment having been accepted for a time without protest, this court said:
“ It took no exception to this rate of payment until December 4, 1875. Up to that time, therefore, it must be regarded as acquiescing m the department’s ruling.”
And in affirming this court the Supreme Court, 103 U. S. 703, said:
“ The Court of Claims found in favor of the claimant and rendered judgment for the sum due after the notification and demand of December 4, 1875, but held that the company was estopped by its acquiescense in the adjustments and the payments it had received without objection or protest from July 1, 1873, to that period. In this we think the Court of Claims was right.”
The analogy is, of course, between this case and the period only antedating protest.
And with the facts cited already there is to be coupled the long lapse of time before this suit was commenced, during which it does not appear that there was any other
*592 action indicating a repudiation of the settlement as a finality. The lapse of time is of strong probative value as indicating acquiescence.
In United States v. Garlinger, 169 U. S. 316, 323, the Supreme Court, discussing the authorized inference, from the facts stated, that payments made were accepted in full, said, “ Such a presumption is very much strengthened by the lapse of two years before the appellee thought fit to make any demand.”
In the Nicholas case, 257 U. S. 71, acquiescence was inferred from lapse of time.
We have referred incidentally to conditions attending an appeal under the accounting system to the comptroller after the settlement of an account by an auditor. Such an appeal is, of course, not incumbent on a claimant, but it has been referred to as an indication of nonacquiscence.
But there was attached to the right of appeal not only the limitation as to time but more significant provision that a claimant whose claim had been allowed in part and disallowed in part could not accept payment of the allowed portion and still have an appeal as to the disallowance. The benefits of the allowance might not be accepted and the claim further contested.
There is no thought of contending that by any statutory provision such conditions attach to access to this court, but the provisions of the Dockery Act, very carefully worked out by a competent commission and considered in detail by Congress, indicate the congressional idea- that some restrictions should be thrown around the prosecution of claims against the United States.
These provisions said to claimants, having procured settlement of their claims by an auditor, “ If you wish to further prosecute your claim before the accounting officers you must,” first, “ do it quick ” (within one year) and, second, “ you must not accept that which has been allowed you, but must place your whole claim in the hands of the comptroller, subject to further disallowance as well as allowance, as the facts may justify.”
The Dockery Act did not reach the judicial system, and did not assume to do so, but it did enunciate principles *593 which, with but slight modification, might well be applied to the prosecution of claims in this court and deprive no one of any substantial right.
Bead in its full intendment the Dockery Act meant in effect that one may not accept a settlement once made and afterwards further prosecute his claim, acceptance, at least hy implication, necessarily resulting from an acceptance of the payment made or from the lapse of the prescribed time. If, in connection with the further prosecution of claims in this court which have been allowed in part and disallowed in part by an auditor’s settlement, we conclude that an acceptance of the settlement as final is a bar against further procedure in this court, we have only to add, to make the rule effective and at the same time not infringe on its equities, that acceptance of payment of the allowed part of a claim without protest or some other action clearly indicating nonacquiescence is such an acceptance of the settlement as will bar further prosecution.
Treated cumulatively, at least, the principle announced precludes recovery in this case. The petition is dismissed.
Graham, Judge; Hay, Judge; Booth, Judge, and Campbell, Chief Justice, concur.