DowNey, Judge,
delivered the opinion of the court:
The question herein is solely as to the applicable rate for the transportation of a large number of men from Jacksom *601 Miss., to San Antonio, Tex., and the essential difference between the parties involves the legality of the Government’s action in applying a rate constructed upon a combination of party fares. The movement originated at Jackson and the destination was San Antonio, and both parties construct their asserted rates by way of Vicksburg, Miss., and Shreveport, La.
There were party rates between these several points but no through party rate and no party rate through from Vicksburg to San Antonio. Eliminating for the moment the situation presented by the action of the railroad military committee as reported by Mr. Bevington, its chairman, and set out in Finding VI, we have the existent conditions and the basis on which the plaintiff billed for the service, the billing antedating the Bevington letter referred to. Vicksburg was then a gateway or basing point and plaintiff constructed its rate by combining an available party fare from Jackson to Vicksburg with the individual fare from Vicksburg to point of destination. Under the tariffs and particularly the military agreements then in force (see findings) this was the only authorized combination since there could be no combination of party fares west of Vicksburg, and we do not understand that there is any dispute in this respect. The plaintiff had been paid by a disbursing ofiicer on this basis and there seems to have been no contrary action until long after.
By the action of the military committee, reported in the Bevington letter referred to, combination of party fares was permitted over Shreveport, with conditions stated, thus in effect erecting a second basing point or gateway within the lines here involved. The settlement as made by the disbursing officer was undisturbed until a considerable time thereafter, approximately four years, when the auditor reopened this settlement, disallowed $4,460.30, and deducted it from amounts due the plaintiff. The disallowance was predicated on the conclusion that an overpayment had been made by reason of the application of an erroneous rate, and held the true rate to be derived from a combination of party fares, Jackson to Vicksburg, Vicksburg to Shreveport, and Shreveport to San Antonio.
*602 The action of the railroad military committee relied upon as authority for this combination by authorizing combinations on Shreveport prohibited triple combinations either of party fares with party fares or party fares with individual fares. Plaintiff asserts that the combination used by the Government was a triple combination, in violation of that provision. The defendant disputes that it was such a combination and, as we understand it, seeks to avoid that contention by asserting that it used an authorized combination on Vicksburg of a party fare from Jackson to Vicksburg with a party fare from Vicksburg to Shreveport and another combination on Shreveport of a party fare from Vicksburg to Shreveport with a party fare from Shreveport to San Antonio.
if the defendant thus escaped triple combination, it must have substituted therefor a double combination or a combination of combinations. To do this it theoretically used a party fare from Vicksburg to Shreveport in combination, on Vicksburg, with a party fare east of that point, and again used this party fare from Vicksburg to Shreveport in combination on Shreveport with a party fare west of that point, a double use of the party fare between Vicksburg and Shreveport as authority, because of its relation to the two basing points, for a through combination, but, of course, this was only a theoretical use, for in actually constructing the rate the fare from Vicksburg to Shreveport was not twice included.
The purpose of the action taken by the railroad committee is apparent, and it was a concession to the United States of advantages available under some circumstances. It did not contemplate such a combination as that used in this instance, and we are of the opinion that the rate adopted was unauthorized and that payment was correctly made in the first instance.
The action of the railroad committee was taken subsequent to the rendition of the service herein and the rendering of the bills therefor. It was attempted to be made retroactive, but it may be open to question whether such an action could deprive the plaintiff of the advantages of a rate authorized when the service was rendered. The con- *603 upon first point renders the decision of this question unnecessary.
It is noticeable that this service was rendered in October, 1916. The settlement was by a disbursing officer, and while the date is not shown such settlements are not usually long delayed. The disallowance by the auditor is shown to have been in February, 1921, probably some four years after the original settlement.
This court, having in mind, among other things, the desirability of prompt settlement of Government accounts to the end that “ there may be an end of accounting,” has inclined to insistence that claimants against the United States shall promptly assert their claims and under such circumstances as repudiate any idea of acquiesence in a settlement made, and representatives of the Government are frequently and properly invoking these principles. Aside entirely from any question of legal right, may it not be pertinently said that even as against the Government a settlement permitted to stand for such a time as to raise all sorts of presumptions as to its finality ought to be permitted the sanctity of that quiet repose to which its presumed finality entitles it? The operation of a rule “ both ways ” is never inequitable.
Judgment for plaintiff in the sum of $4,460.30.
Graham, Judge,; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.