*90 MEMORANDUM BT THE COURT
There are four questions of law presented for consideration in this case.
(1) The plaintiffs’ railroad was not a land-grant road, but was a party to an equalizing agreement by which it agreed to transport Government property on the same terms as land-grant railroads. The accounting officers refused to allow plaintiffs the benefit of the 50 per cent land-grant rate under the act of October 6, 1917, 40 Stat. 361, and made deduction for land grant at the rate of 100 per cent. Plaintiffs are entitled to recover the difference under the decisions in Baker, Receiver, v. United States, 56 C. Cls. 336, and St. Louis, Brownsville & Mexico Ry. Co. v. United States, 58 C. Cls. 619.
(2) The accounting officers, in computing rates for the transportation of United States troops by plaintiffs from El Paso, Tex., to points east of the Mississippi River, used combinations of party fares with individual fares, and thus constructed through fares on points west of the Mississippi *91 River not authorized by the military agreement in force between the railroad company and the Government. The plaintiff is entitled to recover the difference between such rates and the rates allowed by said agreement. Atchison, Topeka & Santa Fe Ry. Co. v. United States, 256 U. S. 205; Illinois Central R. R. Co. v. United States, 58 C. Cls. 593.
(3) The defendant contends that one item of the claim, bill T-1505, is barred by the statute of limitations of three years imposed by section 424 of the transportation act of February 28, 1920, 41 Stat. 491, 492. The transportation for which claim was made by this bill was rendered March 22,1917; this suit was brought March 21,1923, and this court has held that the provision of the transportation act relied on applies, and the item of $4,701.20 is barred. Schaff, Receiver of Missouri, Kansas & Teneas Ry. Co. & Texas, v. United States, 59 C. Cls. 318. The rule of the Atchison, Topeka & Santa Fe case, 58 C. Cls. 583, as to laches, is not applicable here.
(4) A large number of United States troops were transported by plaintiffs from El Paso, Tex., to Hoboken, N. J. These troops were transported by plaintiffs and connecting carriers in tourist sleepers from starting point to destination, and transportation was charged for at rates fixed for such service by a tariff in force on plaintiffs’ line at the time of the movement, Rio Grande tariff No. 130. The accounting officers applied the Toledo, St. Louis & Western tariff, I. C. C. No. 1690, which was canceled June 15, 1917, 13 days after the transportation. This was a one-way joint passenger tariff of second-class party fares from St. Louis, Mo., and East St. Louis, Ill., to New York City, and gave lower rates than the tariff used by plaintiffs in making out their bill, but it stipulated that “ Fares named herein apply to second-class accommodations and tickets sold at these fares will be accepted in coaches and chair cars, but not in parlor cars or sleeping cars.” The Government claims that tourist sleepers were not requested, or, at least, not proven to have been requested. They were, however, furnished and used; they were the customary equipment for such travel and it is unreasonable to assume that the Government requested or would have used anything less suitable.