DowNey, Judge,
delivered the opinion of the court:
The plaintiff company, during 1917, furnished transportation for several movements of troops of the United States *290 and, in connection therewith, moved as freight on Government bills of lading considerable quantities of Government property of the kinds usually accompanying troops and commonly called Army impedimenta. This latter transportation was as freight upon Government bills of lading, and six bills were rendered therefor to Army disbursing officers at the proper rates under applicable freight tariffs and paid as rendered. On June 18, 1918, several months subsequent to the payment of these bills by the disbursing officers, the Comptroller of the Treasury held that the United States was in such cases entitled to one car of impedimenta free for each twenty-five men transported, and pursuant to said decision the auditor, in settling the accounts of the disbursing officers who had made said payments for this transportation, suspended the items of credit claimed on account thereof. Thereafter when other bills of plaintiff company were before the auditor for settlement they were allowed, but deduction was made therefrom of the amount of alleged overpayment on the bills first referred to by reason of the nonapplication of the announced free-baggage-car rule, and upon the making of such deductions the suspensions in the disbursing officers’ accounts were relieved by credits thereon of the deductions made. Plaintiff sues for the amount of such deductions, agreed by the parties to be $14,988.75.
The court has already determined adversely to the Government the right to apply to such movements the so-called free baggage car for each twenty-five men rule, and it follows that the settlements as made by the disbursing officers at applicable freight rates were correct and the plaintiff was entitled to receive what it was paid. Mo. Pac. R. R. Co., No. 3 14581, and Ala. & Vicksburg Ry. Co., No. 34597, decided June 13, 1921.
The plaintiff relies upon these cases, but the defendant distinguishes this case upon the question of protest, citing the fact that in the cases cited there were protests against the deductions, whereas it is stipulated in this case that there was no protest or appeal to the Comptroller of the Treasury. Defendant further, referring to the cases of Central of Georgia R. R. Co., No. 34592, and the N., C. & St. L. Ry., No. 34111, concludes that the instant case is on *291 all fours with those cases, and if the court in those cases held or intended to hold that when payment had been accepted without protest action for the amount deducted might still be maintained there was then no defense to this action. In one of the cases referred to there was a protest, but in the other it is not shown that there was. The question then on the part of the defendant is as to the effect of an acceptance of payment made on the subsequent bills, from which the deductions were made without protest, and we are asked to clarify the position of the court in that respect.
Peculiarly, and somewhat illustrative of unwarranted conditions frequently found in records with which we have to deal, counsel have stipulated among other things “ that no protests or appeals were made against said deductions.” The evidence in the record consists of official certifications from the office of the Auditor for the War Department and the Comptroller General. The Auditor for the War Department in his official report says:
“ No protest to the auditor against his action in the premises was made in any case except in the adjustment of bills F-5321 and F-585I, protest being made in those instances by the United States Eailroad Administration. The subject matter, however, appears by the record to have been in controversy between the receivers and the War Department and various protests were filed with that department against any action that might be taken in reducing to basis complained of in petition, notice being given to that department that the right was reserved to prosecute suit in the Court of Claims.”
We see no reason why a protest by the Eailroad Administration might not inure to the benefit of the receivers when they are again in control of the railroad and asserting its right by suit; and while, technically, protests against the action of an auditor should be addressed to that official, what more natural than that one unfamiliar with internal governmental methods and representing a railroad company which had furnished a service to the War Department should address its complaints to that department ? It fully in this case met the purpose of a protest, and, in fact, the auditor’s office, if that were essential, seems to have been conversant with plaintiffs’ attitude in the matter.
*292 We might upon these facts regard the question presented by the defendant as a moot question, but if we can aid counsel in the disposition of such cases by considering the necessity of a protest in avoidance of estoppel against the prosecution of an action in court we are willing to consider counsel’s contention on the basis presented.
In connection with the statement that there was no protest is coupled the statement that there was no appeal to the Comptroller of the Treasury, and emphasis is laid upon that fact. While an appeal to the comptroller would have indicated nonacquiescence in the action of the auditor, it is in no manner a prerequisite to jurisdiction in this court. In the B. & O. and Oregon-Washington cases (52 C. Cls. 468; 54 id. 131), of frequent reference, wherein one of the contentions was the futility of appeal to the comptroller, it was said that a claimant need not appeal to the comptroller if it regarded it as a vain thing, and that the doors of this court were always open.
In this case it is to be remembered that the original bills for the services here involved were paid as rendered, that plaintiffs’ subsequent bills were not the subject of disallow-ances, but were, in fact, allowed as correct, and that the action complained of was the deduction from the amount correctly allowed on the subsequent bills of an amount held to have been improperly paid on the original bills by disbursing officers. The situation presented is thus somewhat different from that presented if there had been a disallowance of bills as presented, and perhaps bears upon the effect of acceptance of payment without protest.
In case of a partial disallowance by an auditor of an item of an account, the claimant might not accept payment of the amount allowed and have an appeal to the comptroller as to the disallowance. It was so provided in the Dockery Act, and we have suggested the propriety of the application, not of the literal rule but of the principle to the practice in this court; but in such a case as this there was no disallowance of a claim or part thereof. Them was an allowance as to which the claimant had no occasion to protest, but a deduction from the amount of the allowed claim because of a former transaction. There could not, then by analogy be *293 any room for resort in principle to the Treasury rule as to claims disallowed in part and acceptance of payment. The formality of protest remains for consideration.
Used in the sense here involved, and we consider it in no other, it is a word of indefinite import as to form which may find its expression, not in accordance with a prescribed rule, but in various ways. Following a claim through its various stages of presentment, settlement, notice of settlement, and issuance of warrant it is effective at whatever stage it manifests itself after action by the auditor and a separate communication may be the means of its expression. Its purpose is the basis of its necessity, which may be supplied by other circumstances, and its reason is found in the necessities of the accounting branch of the public service.
It has frequently been said by highest authority that there must be an end to accounting. There must be a time when public accounts are to be deemed settled; a time, without reference to statutes of limitations, when it may be assumed that settlements made are final, and it must be as early as circumstances will permit. That ordinarily will occur when, after an auditor’s settlement, the allowance made is paid and payment accepted without any action or circumstances repudiating the idea of an acceptance of the settlement as final, and it will be so regarded and estop the assertion of a further claim thereafter for a disallowed part of the claim. The effectiveness, then, of a protest is in its indication of nonacquiescence in the settlement as made and an intention to further assert claimed rights.
There is a distinction to be made in a case such as this because of facts stated. There was no occasion to indicate non-acquiescence in the settlement made, referring, of course, to the auditor’s settlement in its accounting sense, for it approved and allowed plaintiff’s claims. The direction to withhold a large part of that found and certified to be due the plaintiffs because of a former transaction was such an action as the plaintiffs could not be presumed to have acquiesced in if they asserted their rights with reasonable promptness by suit in this court. The record is indefinite as to' just when these deductions were made, the inference *294 from such facts as appear, taken in connection with known procedure in the auditor’s office in such cases and the necessity of awaiting the presentment 'by plaintiffs of other accounts for auditor’s settlement before the opportunity for deductions presented itself, indicate that the suit was brought with such reasonable promptness as to repudiate the idea of acuiescence.
Perhaps it should be added that cases with which we have had to deal involving settlements in accordance with established practice, both as to the settlements and their acceptance by the plaintiffs, such as those considered in the B.<& O. and Oregon-Washing ton cases, and others similar in principle, differ materially from this one, wherein the payments originally made were in accordance with usual practice and deductions made under a ruling of the comptroller promulgated after the original payments were' made and announcing a new rule, which, so far as appears, had not been ac-quisced in either by this plaintiff or by other carriers. And this holding as to this particular class of cases need not in any sense modify our holdings as to the general effect of acquiescence in settlements made and failure to promptly assert any further rights claimed.
Judgment for plaintiff in the sum of $14,988.75.
Hay, Judge; Graham, Judge; Booth, Judge; and Campbell, Chief Justice, concur.