Campbell, Chief Justice,
delivered the opinion of the court:
This is one of a class of cases in which recoveries are sought for transportation services rendered prior to the taking over and operation of railroads by the Government where payments were made of the bills either to the railroad company or to the director general, or partly to both, and *168 deductions were subsequently made from bills due to the director general for transportation during Federal control on account of supposed overpayments on the corporate bills. It was referred to a special commissioner for a finding and report of the facts, as were the other similar cases, and the parties were given a stated time within which to file exceptions to his findings or conclusions upon the coming in of the commissioner’s report. Some exceptions were filed by the defendant and the case has been heard upon the report, the evidence filed, and the defendant’s exceptions. The report is confirmed. The court has made findings of fact based upon this report and the record in the case. The case is largely controlled by what is said in Reading Company case, No. 34747, decided this day, but some differences between the two cases arising from the methods of paying plaintiff’s bills, the absence in this case of a contract such as was authorized by the act of March 21, 1918, 40 Stat. 451, and the manner of settling the accounts between the Director General of Eailroads and the plaintiff, present a question not found in the Reading Company case.
The railroad systems were taken into possession and control by the Government on the 28th day of December, 1917, under the provisions of the act of August 29, 1916, 39 Stat. 645, and the President’s proclamation dated December 26, 1917, 40 Stat. 1733. For the purpose of accounting the possession and control were to date from midnight of December 31, 1917. From this date until Federal control ended on March 1, 1920, 41 Stat. 457, the plaintiff’s lines were operated by the Director General of Eailroads. Prior to Federal control the plaintiff had rendered transportation services for the Government in the movements of troops of the United States and property of the Government incident to such movements, referred to as camp equipment or company property, and in due course had presented its bills to the Army disbursing quartermaster for payment. Some of these had been paid to the plaintiff, and others of them not having been paid prior to Federal' control were paid by the disbursing quartermaster to the director general, the amounts so paid him passing to the plaintiff’s credit on the books of the Eailroad Administration. These payments to the direc *169 tor general were made between tbe dates January 24 and May 20, 1918. Subsequent to all of tbe payments tbe Auditor for tbe War Department in auditing the disbursing officer’s accounts held that plaintiff’s bills had been overpaid in tbe aggregate sum of $48,439.68, of Avhich the sum of $19,-004.62 had been paid the plaintiff before Federal control and tbe sum of $30,782.33 to the director general, as above stated. Tbe auditor’s action was based upon a decision of the Comptrollery of the Treasury June 18, 1918, 24 Comp. Dec: 774, to the effect that under the tariff in force the Government was entitled to one baggage car free for every 25 men in the troop movements referred to, and applying this riding to plaintiff’s bills for transportation the auditor found that the overpayments were as stated. Carriers that had been affected by this ruling of the comptroller after-wards brought suits in the Court of Claims to recover amounts deducted from their bills under the ruling, and this court held that the bills were not subject to the deductions and gave judgments to the carriers. See Missouri Pacific R. R. Co. case, 56 C. Cls. 341; Alabama and Vicksburg Ry. Co., 56 C. Cls. 496; Texas and Paeific Ry. Co., 57 C. Cls. 284. Other cases have been similarly decided.
We therefore regard it as settled that the plaintiff should recover, unless the right in that regard is defeated or released by the settlement made between the plaintiff and the Director General of Railroads after the termination of Federal control, as evidenced by the agreement between them dated June 22, 1921. This agreement was made in pursuance of section 202 of the transportation act of February 28, 1920, 41 Stat. 456, directing the President “ as soon as practicable after the termination of Federal control ” to “ adjust, settle, liquidate, and wind up all matters, including compensation and all questions and disputes of whatsoever nature arising out of or incident to Federal control.” It is contended by the Government that the agreement includes a settlement of the items here sued upon even though the plaintiff be otherwise entitled to recover. This contention calls for some examination as to the situation of parties giving rise , to the settlement agreement.
The railroad systems, having been taken over by the Government, were operated through the agency of the Director *170 General of Railroads. Moneys and oilier property derived from their operation during Federal control were the property of the United States. See Federal control act, 40 Stat. 451, sec. 12; Dupont v. Davis, 264 U. S. 456-462. But, as to moneys accruing to the railroad company out of corporate transactions prior to Federal control a different condition arose. There was no expropriation of these moneys by the United States, and when received by the director general his relation to the company in ivhose right they were collected was that of trustee or agent. For items of this kind received by the director general lie gave proper credits to the plaintiff company. It does not definitely appear that such credits were immediately entered on the director general’s books, and it may be they were held in abeyance in this case as in some others of its class awaiting decision as to the contract provided for in the act of March 21, 1918. At any rate, it appears from the facts that the director general received considerable amounts paid by the disbursing officers on account of services rendered by plaintiff to the Government prior to Federal control. No question is made as to the amounts of these receipts or the proper crediting of them to plaintiff on the books of the railroad administration. After these moneys had been paid to the director general and while plaintiff’s lines were under Federal control transportation services were rendered by the director general to the Government over these lines, and in due course his bills therefor were rendered to the proper disbursing or accounting officers of the Government. In the meantime the comptroller’s decision above mentioned (24 Comp. Dec. 774) had been made, and the accounting officers claimed that under that decision plaintiff’s bills for services prior to Federal control had been overpaid. They accordingly adopted the course of withholding payment on the director general’s bills, and by what are called “ deductions ” from his bills they from time to time withheld or deducted amounts sufficient to reimburse the Government for the alleged overpayments to the total amount of $48,439.68, which sum includes, as above stated, not only the overpayment of $30,782.32 which had been made on corporate bills to the director general but also that, of *171 S19.004.02 made to plaintiff before Federal control. These deductions from bills of the director general were made at divers times between March 24, 1920, and July 16, 1920. Federal control of railroads terminated March 1, 1920. Sec. 200. transportation act of February 28, 1920, 41 Stat. 457. The final settlement between plaintiff and the director general did not occur until June 22, 1921. The railroad ad.ministration books showed credit to the plaintiff of the sums ( ollected by the director general on plaintiff’s corporate bills for services prior to Federal control and as and when the deductions mentioned were made from the. director general’s bills there were journal entries on the railroad administration books charging back to the plaintiff the amounts of the several deductions. These entries were made, as stated in the findings, in pursuance of General Order No. 66 of the director general, dated February 29. 1920. So long as the director general had in possession funds arising from corporate transactions prior to Federal control he could charge the same with the allowed overpayments and accounts for the balance. During all the period involved in these transactions the decision of the comptroller was controlling upon the accounting officers. The decision by this court as to Government's right to free transportation was made June 13. 1921. Minsouri Pacific R. R. Co., 50 C. Cls. 341. So it would seem the director general could also regard the comptroller's decision as controlling at the time of the transactions. At any rate, he was not required as trustee or agent-holding funds of plaintiff under the circumstances stated to take issue with the accounting officers as to the correctness of the comptroller’s 1‘uling. By crediting the plaintiff with his receipts and charging it with the deductions from ’his own bills and accounting for the difference he left the plaintiff free to settle the controversy with the Government. See Story's Agency (9th ed.), sec. 300. Certainly the Government can not complain of such course, and the plaintiff assented to it. As already stated, funds derived from Federal operation of the road were property of the United States. Likewise, funds disbursed by the quartermaster or accounting officer' belonged to the United States. If the *172 latter overpaid bills to the director general and then required a return of such overpayment, the effect of the transaction when the director general charged to plaintiff’s account the amounts of alleged overpayments was to reimburse the Government at plaintiff’s expense. If then the deductions were erroneously made, it is manifest that the plaintiff and not the Government or the director general or the disbursing officer is the real loser. There was, however, a settlement between the director general and plaintiff, accompanied by a written agreement which declared its purpose and effect was “to evidence a complete and final settlement of all demands of every kind and character as between the parties hereto growing out of the Federal control of railroads,” with some stated exceptions not material here. For the large consideration mentioned in it the agreement contained an acknowledgment by the plaintiff that the director general had fully complied with and satisfied all obligations on his part or on the part of the United States or the railroad administration “ growing out of Federal control,”
At the inception the question arises as to whether the matters involved in this suit grew out of or were an incident to Federal control of railroads because the agreement purports to settle all such demands. Plaintiff’s services in transporting troops and property of the United States prior to the taking possession and control of railroads by the Government did not grow, out of and was not an incident to Federal control, nor were the deductions that were made from these bills as rendered incidents to or matters growing out of Federal control. The point at which Federal control may be said to enter into the transactions is the collection by the director general of plaintiff’s bills. He became liable to account for these collections, because his right to collect, or his receipt of payment, may be said to grow out of Federal control. If the case stopped here without any further facts, we would be compelled to say that the agreement was conclusive upon the question of settlement for the amounts collected. But that is not the case. Before the agreement was actually made the parties engaged in an elaborate statement of accounts. As finally stated, a copy of the final account appears in the findings. *173 Orders were made by the Railroad Administration as to the disposition to be made of a number of accounts, among these the accounts of corporate transactions before Federal control, some referred to as “ lap-overs.” Deductions from the receipts by the director general growing out of plaintiff’s “ corporate transactions ” were made in the exact amount of the deductions which the accounting officers had made from his accounts. This left a balance in his hands due the plaintiff, and for this balance he accounted. Appropriate book entries were made both on the Railroad Administration books and on the corporate books, in accordance with General Order 66 and Accounting Circular 152. These appear more in detail in the findings. By these entries plaintiff has accepted the payments to, or collections of its bills by, the director general, diminished by the deductions from his bills that the accounting officers made. The effect of the whole transaction is that by the deductions made from the director general’s bills the accounting officers have been enabled to balance the plaintiff’s account according to their claim as to overpayments by the disbursing officer. By deducting similar amounts from funds in his hands, collected from plaintiff’s corporate transactions, the director general has taken credit for the money which the accounting officers thus deducted from his bills. And by reason of all these deductions plaintiff’s bills against the Government have been decreased in the amount of the deductions. The account between the director general and plaintiff is thus settled; but plaintiff has not been paid for what may be due on account of erroneous deductions from its bills for services before Federal control. We repeat, the deductions from the director general’s bills were all made by the accounting officers in 1920 after the termination of Federal control and not during Federal control.
It is not necessary to deal at length with the item of the claim that appears to have been paid directly to the plaintiff before Federal control because the deduction made of the amount of that item was included in the total of the deductions from the director general’s bills. It was repaid to him by plaintiff in the transactions above described. Our conclusion is that the plaintiff’s bills were not overpaid *174 and that the settlement with the director general does not preclude a right to recover.
The plaintiff is entitled to recover the amount of the deductions. And it is so ordered.
GRAHAM, -Judge; Hay, Judge; DowNey, Judge. and Booth, Judge, concur.